**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                    *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JESSICA FAY EINKORN,** | : | **Civil Action No.** 2:25-cv-02546 |
| **6786 S Quantock Way** | : | |
| **Aurora, CO 80016** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **UMORTGAGE,** | : | |
| **100 N 18th Street, Suite 1400** | : | |
| **Philadelphia, PA 19103** | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Jessica Fay Einkorn (hereinafter "Plaintiff"), by and through her attorney, Koller Law, LLC, bring this civil matter against UMortgage (hereinafter "Defendant"), for violations of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), the Colorado Anti-Discrimination Act ("CADA"), the Equal Pay Act ("EPA") and the Family and Medical Leave Act of 1993, as amended ("FMLA"). In support thereof, Plaintiff avers as follows:

### THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing at the above captioned address.

3. Upon information and belief, Defendant UMortage is a mortgage company with a location

and corporate headquarters at 100 N 18th Street, Suite 1400, Philadelphia, PA 19103.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweeks in the current or preceding year relevant to the matter at issue.

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment.  In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer.  In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe

Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because the Defendant is located in this judicial district and because some or all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted her administrative remedies under the ADA and CADA.

15. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on October 26, 2023, alleging race, national origin, and color discrimination and equal pay against Defendant.

16. The Charge was assigned a Charge Number 530-2023-05754 and was dual filed with the Colorado Civil Rights Division ("CCRD").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") relative to the Charge and that Notice is dated February 18, 2025.

18. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter.

20. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. Plaintiff is female, Asian and her national origin is Philippines.

23. On April 11, 2022, Defendant hired Plaintiff in the position of Senior Processor.

24. Plaintiff was well qualified for her position and performed well.

25. On May 10, 2022, Plaintiff became an Operations Specialist at Defendant.

26. Plaintiff was well qualified for her position and performed well.

27. On July 4, 2022, Plaintiff became a Business Innovation Specialist.

28. Plaintiff was well qualified for her position and performed well.

29. On November 7, 2022, Defendant promoted Plaintiff to Business Innovation Consultant.

30. Plaintiff was well qualified for her position and performed well.

31. On August 1, 2023, Defendant promoted Plaintiff to Operations Team Lead.

32. Plaintiff was well qualified for her position and performed well.

### PLAINTIFF COMPLAINED ABOUT PERFORMING MORE WORK THAN HER CAUCASIAN MALE COWORKER, DESPITE HOLDING A LOWER POSITION

33. In or around early July 2022, Plaintiff complained to Dave Higgins (Caucasian), VP of Business Innovation, about her job title and pay rate, as she was training Corey Burns

(Caucasian, male), Business Innovation Consultant, and performing more work than him, despite Burns holding a higher position title than her.

34. Higgins informed Plaintiff that he would put her on a plan to get the same level as Burns.

35. On November 7, 2022, Defendant promoted Plaintiff to Business Innovation Consultant and her pay rate was increased by approximately $12,400.

## PLAINTIFF COMPLAINED ABOUT THE SIGNIFICANT PAY DISPARITY BETWEEN HER AND BURNS

36. On May 19, 2023, Plaintiff discovered that Burns was earning approximately $20,600 more than Plaintiff annually.

37. On May 23, 2023, Plaintiff complained to Mike Krist (American-born, Caucasian, male), Director of Business Innovation, about her pay disparity compared with Burns.

38. On June 1, 2023, Defendant increased her pay rate to match what Burns' was earning

39. On August 1, 2023, Defendant placed Plaintiff on a salary, with full-time hours.

40. Plaintiff did not know if Defendant also increased Burns' pay rate.

41. In addition, Megan Lapanowski (American-born, Caucasian, female) was employed as a Business Innovation Specialist, but upon information and belief, was earning approximately $15,000 more than what Plaintiff earned.

## DEFENDANT EXHIBITED A PATTERN AND PRACTICE OF GENDER DISCRIMINATION IN UPPER MANAGEMENT

42. From December 2022 to March 2023, Sabrina Lopez (African American, female), VP of Sales, Nancy Peterson (Asian, female), VP of Product, and Elizabeth Gordon (Caucasian, female), VP of People, were separated from Defendant.

43. During the same time, Defendant hired Breon Price (male), Todd Bitter (male) and Ravi Patel (male) as Branch Managers.

44. It was evident to Plaintiff that Defendant actively recruited Price, Bitter and Patel at the expense of Lopez, Peterson and Gordon.

45. In addition, Defendant had Denisa Hyseni (African American, female), Director of Operations, perform the duties of VP of Operations without receiving a title increase.

46. On August 1, 2023, demoted Hyseni and Natalie Frye (Caucasian, female), Operations Division Leader, to Operations Team Lead.

47. At the same time, Defendant promoted Hussein Elatat (male) to VP of Operations and Mason Maroki (male) to Operations Director.

## PLAINTIFF FILED A CHARGE OF DISCRIMINATION WITH THE EEOC

48. On October 26, 2023, Plaintiff filed her Charge of Discrimination with the EEOC against Defendant alleging race, national origin, color and gender discrimination and violations of the Equal Pay Act ("EPA").

## DEFENDANT ISSUED PLAINTIFF A VERBAL WARNING AND IT WAS ONLY RESCINDED AFTER SHE COMPLAINED

49. On October 27, 2023, Amy Lopez (Caucasian), Director of Processing and Plaintiff's direct supervisor, issued Plaintiff a verbal warning due to an employee, Jay Bunte (Caucasian, male), Loan Originator, allegedly complaining that Plaintiff was disclosing private company information.

50. Plaintiff informed Lopez that she did not disclose any private company information.

51. Lopez stated, "Well maybe you didn't disclose specific information but there could be a possibility," or words to that effect.

52. Plaintiff proceeded to complain to Tracy Reicht-Smith, Vice President of Human Resources, about the warning.

53. Reicht-Smith told Plaintiff that she had spoken to Anthony Casa, CEO, and Charri Albrecht, SVP of Operations, and they concluded that Plaintiff did not release private company information and dismissed the verbal warning.

### LOPEZ CONTINUED TO HARASS PLAINTIFF AND DEFENDANT DID NOT ADDRESS PLAINTIFF'S COMPLAINTS

54. Following her complaint, Lopez continued to micromanage and overly scrutinize Plaintiff's work.

55. Plaintiff complained to Albrecht and Reicht-Smith about Lopez's treatment, but no action was taken to address Plaintiff's complaints.

### PLAINTIFF APPLIED AND WAS APPROVED FOR INTERMITTENT FMLA LEAVE

56. In the end of November, 2023, Plaintiff applied for Intermittent Family and Medical Leave Act ("FMLA") leave due to the anxiety attacks and depression symptoms that she was experiencing due to Defendant's conduct.

57. Kate M. Ziesenheim, PA-C, completed the Healthcare Provider Certification as part of Plaintiff's Intermittent FMLA leave request.

58. Defendant approved Plaintiff's request for Intermittent FMLA leave.

### PLAINTIFF LEARNED THAT BUNTE CONTINUED TO TARGET HER BUT DEFENDANT DID NOT ADDRESS HER COMPLAINTS

59. On December 6, 2023, Plaintiff had a one-on-one meeting with one of her subordinates, Tracy Wheeler.

60. During the meeting, Wheeler informed Plaintiff that Bunte was complaining and disparaging her.

61. Bunte was upset that Plaintiff was unaware of an issue with her other processor's file.

62. Instead of bringing this to Plaintiff's attention, Bunte was stating that he could have her terminated by complaining to Casa.

63. On December 14, 2023, Plaintiff complained to Reicht-Smith that she felt that Bunte was targeting her and attempting to intimidate and bully her.

64. Reicht-Smith instructed Plaintiff to speak with Albrecht regarding her concerns.

65. Plaintiff followed Reicht-Smith's instructions and contacted Albreacht that same day.

66. Albrecht instructed Plaintiff to reach back out to Human Resources.

67. On December 15, 2023, Plaintiff sent an email to Albrecht and Human Resources with a proposed email she wanted to send to Bunte to request a meeting.

68. On December 19, 2023, Reicht-Smith advised Plaintiff not to send the email to Bunte because she believed that it would counter-productive.

69. Reicht-Smith offered for Human Resources to conduct an investigation, but Plaintiff declined because she feared retaliation.

### **DEFENDANT DENIED PLAINTIFF'S REQUEST TO WORK ABROAD**

70. On January 5, 2024, Plaintiff spoke to Lopez about taking time off in Costa Rica for March 2024.

71. Plaintiff stated that she would use two (2) weeks of her paid time off ("PTO") and asked to use Defendant's VPN for the additional two (2) weeks.

72. On January 9, 2024, Melanie Lynch (Caucasian), Director of Human Resources, informed Plaintiff that her request to work indefinite time in Costa Rica was denied.

73. Plaintiff clarified that she was going to use 12 days of PTO and then work an additional 12 days using Defendant's VPN as multiple other employees have done without issue.

74. Importantly, the employees who were able to use Defendant's VPN, many of whom used it for longer than 12 days, are non-Asian, non-Filipino, not utilizing FMLA and did not complain of discrimination or to the EEOC.

75. However, Lynch denied Plaintiff's request.

## **LOPEZ PLACED PLAINTIFF ON A PIP**

76. On January 29, 2024, Lopez instructed Plaintiff to speak with Kaley Kuhn, Mortgage Loan Processor, who had complained to Albrecht about Lopez.

77. Lopez believed Kuhn had sent an excuse for not receiving third-party documentation, instead of an update, but wanted to Plaintiff to speak with Kuhn about sending updates, instead of contacting her directly.

78. Plaintiff felt that this was a punitive measure and meant to portray her negatively.

79. Plaintiff addressed the situation with Kuhn as instructed.

80. She then informed Albrecht that it was a misunderstanding and that she would explain it to Lopez during their one on one scheduled for that day.

81. After Plaintiff explained the misunderstanding to Lopez that day during their weekly one on one meeting, Lopez issued Plaintiff a Performance Improvement Plan ("PIP").

82. Lopez informed Plaintiff that she had planned to wait until February 1, 2024, but decided to issue it now because of the situation with Kuhn.

83. Plaintiff had not received any warning or write-ups prior to being placed on the PIP.

84. Lopez then informed Plaintiff that she was having Denisa Hyseni (African American), Operations Team Lead, co-manage her team.

85. Plaintiff felt that this was being used to push her out of Defendant.

## LOPEZ REFUSED TO PROVIDE PLAINTIFF CLARITY ON A PROCESS

86. On January 31, 2024, Plaintiff emailed Lopez and Amanda Hernandez, Operations Team

    Lead, asking for clarity on a closing process as one of her subordinates had been given

    three (3) different answers.

87. Instead of answering her question, Lopez copied Hyseni on the email and said that

    Hyseni would provide clarity.

## BUNTE FALSELY ACCUSED PLAINTIFF OF NEGLECTING HER DUTIES AND LOPEZ REFUSED TO ADDRESS HIS FALSE ALLEGATION

88. On February 1, 2024, Plaintiff requested assistance from Lopez due to a situation

    between one of her Loan Processor's and Bunte's Assistant.

89. Hyseni had advised Plaintiff to get upper management involved.

90. The following day, on February 2, 2024, Lopez informed Plaintiff that she had spoken to

    Bunte who falsely claimed that he had asked Plaintiff to investigate this Loan Processor,

    but she had not done so.

91. Plaintiff informed Plaintiff that Bunte had not contacted her besides a mix up with loan

    assignments since November 2023 and had the documents to prove this.

92. Instead of addressing Bunte's false allegations against Plaintiff, Lopez stated that "he

    must have a lot going on," or words to that effect.

## PLAINTIFF WAS CONSTRUCTIVELY DISCHARGED

93. Due to Defendant's conduct, Plaintiff submitted her resignation on February 2, 2024.

94. Plaintiff was constructively discharged.

95. Defendant discriminated against Plaintiff due to her race, national origin and gender and

    retaliated against Plaintiff for engaging in protected activity in violation of Title VII and

    the CADA.

96. Defendant also paid Plaintiff significantly less than her male comparators in violation of the EPA.

97. In addition, Defendant retaliated against Plaintiff for utilizing her rights under the FMLA.

98. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

**COUNT I – RACE DISCRIMINATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

99. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

100. Plaintiff is a member of protected classes in that she is Asian.

101. Plaintiff was qualified to perform the job for which she was hired.

102. Plaintiff suffered adverse job actions, including, but not limited to constructive discharge.

103. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

104. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

105. Defendant discriminated against Plaintiff on the basis of race.

106. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

107. The reasons cited by Defendant for the above adverse employment actions that Plaintiff suffered are pretext for discrimination.

108. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – RACE DISCRIMINATION
## <u>COLORADO ANTI-DISCRIMINATION ACT</u>

109. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

110. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her protected class (Asian).

111. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – NATIONAL ORIGIN DISCRIMINATION
## <u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED</u>

112. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

113. Plaintiff is a member of protected classes in that her national origin is Philippines.

114. Plaintiff was qualified to perform the job for which she was hired.

115. Plaintiff suffered adverse job actions, including, but not limited to constructive discharge.

116. Similarly situated people outside of Plaintiff's protected class were treated more favorably than Plaintiff.

117. Circumstances exist related to the above cited adverse employment actions that give rise to an inference of discrimination.

118. Defendant discriminated against Plaintiff on the basis of her protected class.

119. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

120. The reasons cited by Defendant for the above cited adverse employment actions that Plaintiff suffered are pretext for discrimination.

121. Defendant's conduct was willful or performed with reckless disregard to her federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### COUNT IV – NATIONAL ORIGIN DISCRIMINATION
### COLORADO ANTI-DISCRIMINATION ACT

122. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

123. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of her national origin (Philippines).

124. As a result of Defendant's unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

### COUNT V – SEX DISCRIMINATION
### TITLE VII OF THE CIVILE RIGHTS ACT OF 1964, AS AMENDED

125. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

126. Plaintiff is a member of protected classes in that she is female.

127. Plaintiff was qualified to perform the job.

128. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

129. Circumstances exist related to the above cited employment actions that give rise to an

inference of discrimination.

130. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

131. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

132. Defendant constructively discharged Plaintiff.

133. As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

   **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI – GENDER DISCRIMINATION
## COLORADO ANTI-DISCRIMINATION ACT

134. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

135. Plaintiff is a member of protected classes in that she is female.

136. Plaintiff was qualified to perform the job.

137. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

138. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

139. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

140. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

141. Defendant terminated Plaintiff.

142. As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VI – RETALIATION
## <u>TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED</u>

143. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

144. Plaintiff engaged in protected activity protected by Title VII when she utilized her rights by filing a Charge with the EEOC.

145. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

146. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT VII – RETALIATION
## <u>PENNSYLVANIA HUMAN RELATIONS ACT</u>

147. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

148. Plaintiff engaged in protected activity protected by CADA when she utilized her rights by filing a Charge with the EEOC.

149. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

150. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT VIII – DISCRIMINATION**
**EQUAL PAY ACT, 29 U.S.C § 206(d)**

151. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

152. Defendant employed Plaintiff within the meaning of the Equal Pay Act.

153. Defendant paid different wages to Plaintiff, a woman, at rates less than the rates that it pays male employees for equal work in jobs which require equal skill, effort, and responsibility, and which are performed under similar working conditions.

154. In doing so, Defendant violated the Equal Pay Act, 29 U.S.C. § 206(d).

155. Defendant's violation of the Equal Pay Act was willful.

156. Defendant cannot demonstrate that the wage differential was caused by any factor other than sex.

157. Defendant did not have a legitimate, non-discriminatory reasons for its compensation decision, and its stated reason was pretext for discrimination.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT IX – DISCRIMINATION/RETALIATION**
**THE FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED**

158. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

159. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

160. At all times material, Defendant knew, or should have known, of Plaintiff's need for Intermittent FMLA Leave to care for her own serious medical conditions.

161. Plaintiff gave Defendant sufficient information to allow it to understand that she needed Intermittent leave for FMLA-qualifying reasons.

162. The retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke her federally protected rights under the FMLA.

163. As a result of Plaintiff's attempt to invoke her FMLA rights, by requesting and utilizing her FMLA rights, Defendants have retaliated against Plaintiff by constructively discharging her employment.

164. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's Intermittent FMLA leave.

165. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

166. As a direct and proximate result of Defendant's constructive discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendants' willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

167. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

168. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendants and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE**, Plaintiff, Jessica Fay Einkorn, requests that the Court grant her the following relief against Defendant:

(a) Compensatory damages;

(b) Punitive damages as appropriate;

(c) Liquidated damages as appropriate;

(d) Emotional pain and suffering;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences;

(i) A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII, the CADA, the EPA and the FMLA.

(j) Order Defendant to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which

provide equal employment opportunities;

(k)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: May 19, 2025          By:    */s/David M. Koller*
David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*